# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| United States of America, | Case No. 2:22-cr-00088-ART-BNW |
| Plaintiff, | |
| v. | **Report and Recommendation** |
| Isaiah Tisby, | |
| Defendant. | |

## I.     Introduction

On March 18, 2022 Las Vegas Metropolitan Police Department detectives observed Isaiah Tisby walk into a Dollar Store while they were surveilling him for the purpose of executing an arrest warrant. Five detectives entered the store and participated in Mr. Tisby's arrest. The detectives were dressed in plain clothes (not police uniforms) to effectuate a covert arrest. The arrest itself was frenzied. Mr. Tisby sprayed bear spray, detectives wrestled with Mr. Tisby through the store knocking over shelves until finally pinning him on the ground, and a taser was deployed (which ended up tasing not only Mr. Tisby, but two detectives as well). In the process of handcuffing Mr. Tisby, Detective Theobald said something like, "what are you doing?" or "why are you doing this?" Mr. Tisby responded by saying something to the effect of, "I don't want to go back to jail." None of the detectives administered *Miranda* warnings prior to Mr. Tisby making that statement.

Due to Mr. Tisby's conduct during his arrest, he is charged with assault of federal officers. ECF No. 1. His defense at trial will be that he did not know the individuals at the Dollar Store were law enforcement officers and that he was acting in self-defense. Tr. at 113. However, the statement at issue suggests he did know (at least at some point) that he was dealing with law enforcement officers.

In his motion, Mr. Tisby argues that his statement should be suppressed because he was subject to custodial interrogation when he made it, and no *Miranda* warnings had been administered. ECF No. 25. He also contends that his statement is not admissible, as it was accompanied by violence, rendering it per se involuntary. ECF No. 51.

To decide whether Mr. Tisby's *Miranda* rights were violated, this Court must determine whether Mr. Tisby was subject to custodial interrogation. This Court finds that he was subject to custodial interrogation but that the public safety exception applies. As a result, his statement was not made in violation of *Miranda*. Nevertheless, this Court finds that his statement was per se involuntary because it was accompanied by violence and thus, it is inadmissible at trial.

## II.   The Parties' Arguments

Mr. Tisby argues that he was subject to custodial interrogation when he made the statement about not wanting to go back to jail. ECF No. 25. First, he argues he was in custody once he was wrestled to the ground by several LVMPD detectives, tased, and handcuffed. *Id*. at 9-10. Given Mr. Tisby is being charged with assaulting federal officers, he argues that Detective Theobald's question, "what are you doing," constituted an interrogation because it was likely to elicit an incriminating response. *Id*. at 15-16. Mr. Tisby also maintains this was not tantamount to "on the scene questioning" given he was in custody, and that the "public safety" exception to *Miranda* only applies when trying to ascertain the whereabouts of guns. ECF No. 34. The burden to show the absence of custodial interrogation, according to Mr. Tisby, rests with the government. *Id*. at 9; ECF No. 44.

Mr. Tisby's second argument is that his statement must be suppressed because it was involuntary.[1] ECF No. 51. He argues the per se rule of inadmissibility applies as opposed to the totality of the circumstances test, as his confession was accompanied by violence. ECF No. 51 at 2-3. He further argues that there is no need to determine whether the violence *caused* his

---

[1] By way of background, Mr. Tisby did not argue in his opening motion that his statement was involuntary. ECF No. 25. Instead, the government's opposition raised the issue of voluntariness by arguing it could introduce the statement as impeachment evidence even if this Court found a *Miranda* violation. ECF No. 33 at 10-11. Mr. Tisby's reply challenged whether the statement would be admissible as impeachment evidence based on the involuntariness of his confession. This Court then requested further briefing. ECF No. 48.

confession, as the per se rule is automatically triggered when a confession is *accompanied by* violence. *Id*. at 4. His position is that the per se rule is not subject to exceptions: the level of force used or the timing of it are irrelevant. *Id*. at 4-9. As a result, he argues that his statement cannot be used at all. *Id*. at 10.

The government takes the opposite view. Its position is that Mr. Tisby was not in custody at the time he made the statement; he was not handcuffed, searched, separated from his belongings, or placed in a patrol car. ECF No. 33 at 4-8. Instead, the government argues that Mr. Tisby was actively resisting arrest. *Id*. As to interrogation, the government's position is that Detective Theobald's statement was not a question designed to elicit an incriminating response—it was a rhetorical question in response to a startling event made in the hopes of gaining control of Mr. Tisby. *Id*. at 8-9. In this vein, the government emphasizes that detectives were not there to investigate any matter or obtain statements in furtherance of an investigation (they did not even know Mr. Tisby would ultimately be charged with the instant offense); they were simply there to execute an arrest warrant. *Id*. Lastly, the government argues that the exchange at hand could be construed as "on the scene questioning" or, alternatively, that the public safety exception applies. *Id*. As to burdens, the government's view is that the burden to show custodial interrogation is Mr. Tisby's. *Id.* at n.1; ECF No. 45.

Regarding the voluntariness of the statement, the government argues for the application of the totality of the circumstances test. *Id*. at 3-4. It also argues that the per se rule only applies if the violence caused the confession *Id*. at 4 ("*Stein* . . . demonstrates that the violence is per se coercive only when it *causes* a confession."). Furthermore, it contends that the per se rule is not applicable in this case since the violence was not employed as an investigatory technique, but rather to carry out an arrest. *Id* at 5. Lastly, the government cites several cases it views as factually similar, which found statements to be voluntary even when accompanied by violence. *Id* at 5-7. As a result, the government requests a ruling that the statement was voluntary. ECF No. 52.

### III. Findings of Fact

On March 18, 2022, Detective Jackson and other LVMPD detectives were tasked with executing an arrest warrant on Isaiah Tisby. Tr. at 29.[2] After surveilling Mr. Tisby and seeing him go into the Dollar Store, Detectives Magsaysay, Faller, and Beckerle went into the store intending to execute the arrest warrant. Tr. at 14, 29, 66. Detectives Jackson and Theobald entered shortly thereafter. Tr. at 15, 30, 55. Detective Theobald waited a little while before entering the store because she had arrested Mr. Tisby twice before and did not want him to recognize her. Tr. at 54, 67, 68. Detective Jackson had also arrested Mr. Tisby before. Tr. at 13.

A surveillance video captured Mr. Tisby's arrest. Government Exhibit 2. The first six seconds of surveillance show Detective Magsaysay trying to detain Mr. Tisby by putting his arms around him.[3] Gov. Ex. 2. Mr. Tisby can be seen spraying bear spray into the air and trying to get away.[4] Gov. Ex 2, 00-06 seconds. As this was happening, Detective Magsaysay lifted Mr. Tisby into the air in an unsuccessful attempt to subdue him. *Id*. Detectives Faller and Beckerle met Mr. Tisby and Detective Magsaysay in the aisle by the refrigerator on the far-right side of the store.[5] Gov. Ex. 2, 09-10 seconds.

Within seconds, Detective Jackson approached from the back of that aisle.[6] Gov. Ex. 2, 11-13 seconds. Detective Jackson was wearing a police vest (Gov. Ex. 2, 8 seconds) and announced himself as "police" before Mr. Tisby was brought down to the ground. Tr. at 17. He told Mr. Tisby to "stop resisting" more than once. Tr. at 24. He also heard others telling Mr. Tisby to stop resisting. Tr. at 17.

At the 15-second mark, detectives were able to get Mr. Tisby to the ground. Gov. Ex. 2, 15 seconds. Four detectives were either on the floor or surrounding Mr. Tisby for several seconds trying to handcuff him. Gov. Ex. 2, 15-43 seconds. During this time, Mr. Tisby was flailing his arms and legs, making it hard for the detectives to handcuff him. *Id*.

---

[2] Transcript pages 1-90 are at ECF No 42. Transcript pages 91-129 are at ECF No. 43.
[3] Detective Jackson testified that the detective putting his hands around Mr. Tisby was Detective Magsaysay. Tr. at 22.
[4] Detective Theobald testified it was bear spray. Tr. at 87. Both Detectives Jackson and Theobald were affected by the bear spray. Tr. at 17, 55.
[5] Detective Jackson testified that these were Detectives Faller and Beckerle. Tr. at 22.
[6] Detective Jackson testified that was him. Tr. at 16.

A taser was deployed around the 19-second mark. Tr. at 17, 24. Mr. Tisby was tased. *Id.* Detective Jackson and another detective got wrapped in the coils and got tased as well. *Id.*

Detective Theobald approached the area around the 25-second mark. Gov. Ex. 2, 25 seconds. Detective Theobald yelled "Isaiah" around the 30 to 44-second mark while there were at least two to three detectives on the ground with Mr. Tisby. Gov. Ex. 2, 30-44 seconds; Tr. at 57, 61, 62. Detective Theobald does not contest that, within seconds, she said something along the lines of "what are you doing?" or "why are you doing this?" Tr. at 62. In response, Mr. Tisby stated "something to the effect that he just didn't want to go back to jail." Tr. at 20, 57, 62-63. Detective Jackson was trying to handcuff Mr. Tisby during this exchange and was ultimately able to handcuff him within seconds of this exchange. Tr. at 25, 37. Detective Theobald was directly on top of Mr. Tisby when he made the statement in question. Tr. at 97.

Detective Theobald asked the question to get Mr. Tisby's attention. Tr. at 57. She did not care what Mr. Tisby's answer was—she simply wanted him to acknowledge that she was there and get him to comply while they attempted to handcuff him. Tr. at 57. She was not involved in determining whether Mr. Tisby would be charged with the assault of federal officers. Tr. at 59.

It is not uncommon for individuals in Mr. Tisby's situation to make remarks such as this one (i.e., that they do not want to go to jail). Tr. at 28, 35, 56, 58. In fact, it is routine. Tr. at 28. According to Detective Jackson, when arresting fugitives, no questions are asked because it is not safe and because of *Miranda* implications. Tr. at 26, 41.

*Miranda* warnings were not provided during this sequence of events. Tr. at 29, 70. No questions were asked after Mr. Tisby was handcuffed. Tr. at 25-26.

**IV.   Analysis**

    **A.   Burden**

First, this Court agrees with the government that the cases Mr. Tisby relies on for the proposition that the Government bears the burden to show the absence of custodial interrogation actually focus on the existence of a valid *Miranda* waiver and the voluntariness of a statement. In contrast, the question here is who bears the burden to establish custodial interrogation (or the absence thereof).

Ninth Circuit decisions suggest the burden to show custodial interrogation falls on the defendant. First, in *United States v. Moreno-Flores,* 33 F.3d 1164 (9th Cir. 1994), the Ninth Circuit held that *the defendant* had not been able to establish that he had been subject to interrogation. *Id.* at 1170 ("Moreno–Flores has failed to establish that Dunlap should have known his statements were reasonably likely to elicit an incriminating response."). Several years later, in *United States v. Morgan*, 738 F.3d 1002 (9th Cir. 2013), the Ninth Circuit echoed this previous holding. *Id.* at 1006 ("Rather, a defendant must show that his statement 'was the product of words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response.'"). While there is not much analysis accompanying these holdings, this Court cannot ignore that the Ninth Circuit appears to have placed the burden on the defendant to show custodial interrogation.[7]

As explained below, this Court finds that Mr. Tisby has met his burden to show custodial interrogation.

**B.   Custody**

Officers are required to inform suspects of their Fifth Amendment rights before custodial interrogations. *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966). The standard for determining whether police questioning rises to the level of a custodial interrogation is detailed below:

> *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." The "ultimate inquiry" underlying the question of custody is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. To answer this question, the reviewing court looks to the totality of the circumstances that might affect how a reasonable person in that position would perceive his or her freedom to leave.

*Stanley v. Schriro*, 598 F.3d 612, 618 (9th Cir. 2010) (cleaned up).[8]

---

[7] Having said that, this Court takes note of the amended decision by the Ninth Circuit in *United States v. Bassignani* where it deleted the language from its previous decision that squarely placed the burden on the defendant to show custodial interrogation. *Cf. United States v. Bassignani,* 560 F.3d 989, 993 (9th Cir. 2009), *with United States v. Bassignani,* 575 F.3d 879 (9th Cir. 2009).

[8] While multi-factor tests have been used to determine whether a defendant is in custody, the ultimate inquiry is whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *Quarles*, 467 U.S. at 655.

    Mr. Tisby made the statement in question somewhere around the 30-50 second mark. By then, he had been dragged through the store, lifted up in the air, tackled to the ground, tased, and was being handcuffed. Several detectives had ordered him to stop resisting. At the precise moment he made the statement in question, Detective Theobald was on top of him. Two other detectives were in very close proximity. And while it is true Mr. Tisby resisted the arrest, his attempt to free himself was an unsuccessful one. Based on the totality of the circumstances, a reasonable person in Mr. Tisby's position would believe he was not free to leave.

    This Court agrees with the government that this is not the traditional "custody" setting for *Miranda* purposes; the incident did not take place at a police department or the back of a patrol vehicle. However, as the United States Supreme Court explicitly recognized, custody for purposes of *Miranda* is not limited to these two settings. *New York v. Quarles*, 467 U.S. 649, 654 n.4 (1984) ("*Miranda* on its facts applies to station house questioning, but we have not so limited it in our subsequent cases . . . .") (compiling cases). Other cases also demonstrate that a suspect need not be at a police station or in a police car to be in custody under *Miranda*. *See, e.g.*, *United States v. Mora-Alcaraz*, 986 F.3d 1151, 1155-57 (9th Cir. 2021) (suspect in custody at shopping mall); *United States v. Craighead*, 539 F.3d 1073, 1089 (9th Cir. 2008) (suspect in custody at his home); *United States v. Kim*, 292 F.3d 969, 977–78 (9th Cir. 2002) (suspect in custody at store); *Orozco v. Texas*, 394 U.S. 324, 326–27 (1969) (suspect in custody in his bedroom).

    In sum, for the reasons stated above, the Court concludes there was a restraint on freedom of movement of the degree associated with a formal arrest and that Mr. Tisby was in custody for purposes of *Miranda*.

    **C.**    **Interrogation**

    Next, this Court analyzes whether Detective Theobald's question to Mr. Tisby constituted "interrogation." The term "interrogation" refers to (1) express questioning and (2) "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v.*

*Innis*, 446 U.S. 291, 301 (1980).[9] It is precisely because "the police . . . cannot be held accountable for the unforeseeable results of their words or actions," that "the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Id*. at 301–02. Courts use an objective test to determine whether questioning constitutes interrogation. *United States v. Moreno-Flores*, 33 F.3d 1164, 1169 (9th Cir. 1994). The officer's subjective intent is relevant, but not decisive, because in determining whether interrogation occurred, the focus is upon the defendant's perceptions. *Id*.

    This Court acknowledges that there is some ambiguity as to precisely what Detective Theobald said. Detective Theobald testified she said: "Are you kidding me?"; "What are you doing?"; "Why are you doing this?"; or "Knock it off." Tr. at 57. She later acknowledged Mr. Tisby's response about not wanting to go back to jail was "specifically regarding the reason for his resistance." Tr. at 79. When asked what it was Detective Theobald said, Detective Jackson testified she said something like, "What are you doing?" Tr. at 34. Given all the testimony, the Court finds it is more likely than not that Detective Theobald said, "What are you doing?" or "Why are you doing this?"

    Detective Jackson and Detective Theobald testified that suspects make statements all the time. Tr. at 35, 58. Not surprisingly, Detective Jackson testified that one of the reasons why police do not ask questions while executing arrest warrants is to avoid running afoul of *Miranda*. *Id.* at 58, 41. If (1) statements like these are made all the time and (2) one of the reasons not to ask questions during the execution of a warrant is to avoid *Miranda* violations, Mr. Tisby's response cannot be said to be the *unforeseeable* result to Detective Theobald's question. In this context (and considering statements like these are made all the time), Detective Theobald's question is the type of question that was reasonably likely to elicit an incriminating response, whether construed as direct questioning or its functional equivalent.

---

[9] It is the "latter portion of this definition [that] focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *Innis*, 446 U.S. at 301.

It is true that in determining whether Detective Theobald's words or actions were reasonably likely to elicit an incriminating response, the focus is primarily upon the perceptions of the suspect. *Innis*, 446 U.S. 301. Nevertheless, this Court considered her subjective intent given its bearing on whether she should have known her question was reasonably likely to elicit an incriminating response. *Innis*, 446 U.S. at 301 n.7. This Court does not doubt that Detective Theobald meant this question to be rhetorical in the sense that it was asked for effect (i.e., to get Mr. Tisby to calm down). Nevertheless, the record is clear that these detectives knew defendants often make statements while being arrested. Tr. at 28, 35, 56, 58. As a result, they do not ask questions to avoid running afoul of Miranda. Tr. at 26, 41. Thus, she should have known her question was reasonably likely to elicit an incriminating response—whether it was intended for that purpose or not. And the fact that Detective Theobald did not know Mr. Tisby would be charged with the instant offense at the time she asked the question does not affect the analysis. *United States v. Williams*, 842 F.3d 1143, 1147 (9th Cir. 2016) (explaining that the absence of gang-related charges at the time the question was asked did not mean it was not likely to prove incriminating).

Accordingly, Mr. Tisby met his burden to show that he was subject to custodial interrogation and that no *Miranda* warnings had been administered.[10]

### D. On-the-Scene Questioning Exemption

*Miranda's* holding explicitly does not affect "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process." *Miranda*, 384 U.S. at 477. But the Court in *Miranda* applied the concept of on-the-scene questioning to "persons not under restraint." *Id.*; *see also Cervantes v. Walker*, 589 F.2d 424, 427 (9th Cir. 1978) ("In contrast to custodial interrogation, on-the-scene questioning does not require *Miranda* warnings.").[11] Given Mr. Tisby was in custody, this exemption does not apply.

---

[10] As already mentioned, this Court also makes the alterative finding that the government has not met its burden to show that Mr. Tisby was not subject to custodial interrogation.

[11] Incidentally, although the government relied on *Arnold v. United States*, that case does not stand for the proposition that a defendant can be subject to on-the-scene-questioning *while in custody*. 382 F.2d 4 (9th Cir. 1967). In fact, the Ninth Circuit explained that the defendant was not under arrest and, instead, subject to a brief detention when the questioning took place. *Id*. at 7.

### E. Public Safety Exception

This Court finds that the public safety exception applies to this case. Under the public safety exception, *Miranda* warnings need not be given when "police officers ask questions reasonably prompted by a concern for the public safety." *Quarles*, 467 U.S. at 656. For the public safety exception to apply, there must have been "an objectively reasonable need to protect the police or the public from immediate danger." *United States v. Carrillo*, 16 F.3d 1046, 1049 (9th Cir. 1994).

At the outset, the Court notes that the exception is not only limited to situations involving guns. While the exception has been applied mainly in that setting, the Ninth Circuit has also applied it in other instances not involving guns. *See, e.g.*, *id.* (applying exception because question allowed police officers to protect themselves from harmful contact with syringes and toxic substances). So long as there is "an objectively reasonable need to protect the police or the public from any immediate danger," the exception applies. *Id.*; *see also Quarles*, 467 U.S. at 659 (explaining exception applies to police officers "confronting situations presenting a danger to the public safety").

Here, there was an objectively reasonable need to protect the police or the public from Mr. Tisby's frantic efforts to avoid apprehension. Mr. Tisby was spraying bear repellant throughout the store; detectives were running to apprehend him; shelves and displays were knocked over; and Mr. Tisby was still flailing his arms and legs even when detectives were on the ground with him trying to handcuff him. Importantly, the danger was on-going at the time Detective Theobald asked her question. In this context, Detective Theobald's question was reasonably prompted by the immediate danger. As a result, the public safety exception applies.

### F. Voluntariness of Statement

The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." An involuntary statement by a defendant violates the Due Process Clause of the Fifth Amendment. *Colorado v. Connelly*, 479 U.S. 157, 163 (1986). "If the statement was procured such that it was involuntary, then the statement is excluded for all purposes." *Mincey v. Arizona*, 437 U.S. 385, 398 (1978); *Bradford v. Davis*, 923 F.3d 599, 615

(9th Cir. 2019). The government bears the burden of proving by a preponderance of the evidence that the defendant's confession was voluntary. *Id*. at 616.

This Court is bound by clear Ninth Circuit precedent holding that confessions accompanied by physical violence are per se inadmissible. *United Stated v. Jenkins*, 938 F.2d 934, 938 (9th Cir. 1991). If violence accompanies a confession, courts do not employ a totality of the circumstances test to determine if a defendant's will was overborne when he confessed. *Id*.; *see also United States v. Crawford*, 372 F.3d 1048, 1060 (9th Cir. 2004); *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003) (differentiating test used to determine the voluntariness of statements accompanied by physical violence from those accompanied by psychological coercion); *United States v. Cragg*, 807 F. App'x 640, 643 (9th Cir. 2020). Instead, "[s]uch confessions properly are presumed involuntary because of . . . their unreliability and the great likelihood that the use or threatened use of violence overbears a suspect's will." *Id*.

Here, Mr. Tisby (1) confessed and (2) the confession was accompanied by violence. As discussed above, Mr. Tisby stated he did not want to go back to jail in response to Detective Theobald's question. It appears the government is treating this statement as a confession it would like to use at trial to show Mr. Tisby knew he was dealing with law enforcement officers, thus undercutting his defense. This Court also found that shortly before Mr. Tisby made this statement, he had been tackled to the ground and tased. In addition, a law enforcement officer was on top of him at the time of the statement. Thus, given his confession was accompanied by violence, the per se rule applies and renders his statement involuntary.

The government asks this Court to impose a condition precedent to the application of the per se rule and first determine whether the violence caused the confession. But the Court in *Stein* clearly explained that when violence is present "there is no need to weigh or measure its effects on the will of the individual victim." *Stein v. People of State of New York*, 346 U.S. 156, 182 (1953) (overruled on other grounds by *Jackson v. Denno*, 378 U.S. 368 (1964)). Thus, whether Mr. Tisby was "forced to speak under threat or fear of violence" or whether Detective Theobald "expect[ed] an answer to her rhetorical question" has no bearing on the analysis.

Next, this Court acknowledges the unusual facts of the case before it. The Court agrees with the government that the use of force was a response to Mr. Tisby's conduct and utilized to execute an arrest warrant. But this Court does not agree with the government that the officers' intent (and the fact that violence was not used as an investigatory tool) affects the application of the per se rule. The Court is not aware of any precedent holding that if a confession takes place during an arrest accompanied by violence, the per se rule is inapplicable, and for good reasons. The carve-out the government seeks would turn the per se rule on its head; it would allow for confessions to be deemed voluntary even if accompanied by violence so long as they take place during an arrest.

Lastly, this Court reviewed the cases cited by the government in its supplement. But those cases apply a totality of the circumstances test to determine whether the confession was voluntary. As explained above, that is not the test in the Ninth Circuit when a confession is accompanied by violence. As a result, those cases are of little use to the Court's analysis.

In sum, contrary to the government's suggestion, binding precedent does not allow for any exceptions to the Ninth Circuit's per se rule. Mr. Tisby's statement was involuntary because it was accompanied by violence. Thus, the statement cannot be used at all.

**V.  Conclusion**

**IT IS THEREFORE RECOMMENDED** that Mr. Tisby's motion to suppress (ECF No. 25) be **DENIED in part and GRANTED in part.** It is **DENIED** to the extent that this Court finds Mr. Tisby's statement was not made in violation of *Miranda* and **GRANTED** to the extent that this Court finds his statement was involuntary and cannot be used at trial.

**NOTICE**

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: April 3, 2023

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE