UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:22-cr-00088-ART-BNW |
| Plaintiff, | ORDER |
| v. | |
| ISAIAH TISBY, | |
| Defendant. | |

Before the Court is the government's motion in limine seeking to admit certain evidence. (ECF No. 70.) Also before the Court is Tisby's motion in limine seeking to exclude certain evidence the government seeks to introduce. (ECF No. 71.)

I.    **Background**

On April 26, 2022, a federal grand jury returned a four-count indictment charging Tisby with two counts of Assault on a Federal Officer and Employee with Use of a Deadly or Dangerous Weapon, in violation of Title 18, United States Code, Section 111(a)(1) and (b); and two counts Assault on a Federal Officer and Employee, in violation of Title 18, United States Code, Section 111(a)(1). (ECF No. 1.) The charges stem from an incident, on March 18, 2022, when federal Task Force Officers (TFO) assigned to the FBI Criminal Apprehension Team (CAT), were tasked to find and apprehend Tisby for a felony warrant for Possession of a Firearm by a Prohibited Person. (ECF No. 70.) Officers engaged in a "covert takedown" inside the Family Dollar store. (*Id.*) TFOs Faller, Beckerle, and Magsaysay, all in plain clothes, went in the store. (*Id.*) Tisby engaged in an altercation with the officers, deploying bear spray, during his arrest. (*Id.*)

From the pleadings of the parties, it is apparent the trial will focus on whether Mr. Tisby knew his attackers were federal officers, believed force was necessary to defend himself, and used no more force than appeared reasonably necessary. 9th Cir. Model Jury Instruction § 8.3. (*See* ECF Nos. 70; 71.)

The government seeks an admissibility ruling on the following evidence: (a) that at the time of his arrest in this case Tisby had an active bench warrant the circumstances surrounding how the bench warrant was issued, to wit: that he had failed to appear in court as ordered; (b) evidence regarding Tisby's prior arrests on November 5, 2021 and January 29, 2022 where officers acted in a similar manner to take him into custody and; (c) the facts known to officers that supported the belief that Tisby had previously used lethal force, possessed dangerous weapons, and was a flight risk.

Tisby seeks to exclude the aforementioned evidence as well as an in limine order that Tisby's prior arrests, failures to appear, and misdemeanor convictions are not admissible under Federal Rule of Evidence 609.

## II.    Legal Framework

Rule 404(b)(1) prohibits using evidence of "any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). But such evidence may be admissible or other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2).

Rule 403 allows a district court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

"Evidence of other acts is not subject to 404(b) analysis if it is inextricably intertwined with the charged offense." *United States v. Wells*, 879 F.3d 900, 928

(9th Cir. 2018) (internal citation and quotation omitted). There are two circumstances in which other acts evidence is inextricably intertwined with the charged conduct: (1) the evidence "constitutes a part of the transaction that serves as the basis for the criminal charge," and (2) the evidence is necessary "to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Id.*; *see also United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995). "To qualify as inextricably intertwined evidence that is outside Rule 404(b), 'the question is whether the evidence is properly admitted to provide the jury with a 'complete story' of the crime [at] trial; whether its absence would create a 'chronological or conceptual void' in the story of the crime, or whether it is 'so blended or connected' that it incidentally involves, explains the circumstances surrounding, or tends to prove any element of the charged crime.'" *United States v. Chavis*, 429 F.3d 662, 670 (7th Cir. 2005). A jury "cannot be expected to make its decision in a void-without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." *Vizcarra-Martinez*, 66 F.3d at 1013 (applying this rule to the case of United States v. Daly, 974 F.2d 1215 (9th Cir. 1992)).

Rule 609 allows for the admission of certain convictions to attack a witness's character for truthfulness. Fed. R. Evid. 609(a). Crimes punishable by death or by imprisonment for more than one year must be admitted in a criminal case in which the witness is a defendant if the probative value of the evidence outweighs its prejudicial effect to that defendant. Fed. R. Evid. 609(a)(1)(B). Rule 609 also provides for the admission of any crime regardless of the punishment if the court can readily determine that establishing the elements of the crime required proving-or the witness's admitting-a dishonest act or false statement. Fed. R. Evid. 609(a)(2).

**A. Tisby's Bench Warrant**

The parties appear to largely agree to the terms under which the

government may present evidence and elicit information regarding Tisby's underlying state court warrant. The government seeks to present evidence that Tisby was wanted on a state bench warrant on the date the charged conduct occurred, because such evidence is inextricably intertwined with the charged offense, but not to inform the jury of the nature of the underlying state court charge. (ECF Nos. 70; 77.) Tisby agrees but further argues that exploration of why the bench warrant was issued (failure to appear) is not probative and risks unfairly prejudicing Tisby.

The Court agrees with Tisby and finds that to the extent that the warrant was issued for failure to appear, that evidence is of marginal relevance and further finds that the fact that evidence that the warrant was issued for failure to appear in court is substantially outweighed by a danger of unfair prejudice. *See* FED. R. EVID. 403. The government is thus precluded from offering evidence regarding the underlying state court charge or the fact that the warrant was issued for failure to appear.

**B. Tisby's Two Prior Arrests by the CAT TFOs**

The government seeks to admit evidence of two prior arrests occurring on November 5, 2021, and January 29, 2022. During these two incidents, Tisby was arrested by members of the same CAT team that effectuated Tisby's arrest in this case. The government argues that the evidence is material to prove the crime charged if Tisby claims self-defense. The government argues that the prior arrests are relevant to prove that Tisby knew, or had reason to know, the people he assaulted were law enforcement and could not have reasonably believed that he was under the threat of unlawful force. The government argues that the prior two arrests are the same as the underlying one because the CAT TFOs were operating in plain clothes and conducted a covert operation to arrest Tisby. The government argues that the evidence of the prior arrests is also supported by sufficient evidence. Lastly, the two prior arrests are close in time, which goes to Tisby's

ability to recognize the officers and his knowledge that the covert procedures used were lawful.

When a defendant puts forth a proper self-defense claim, the government must also prove that (1) the defendant knew that [TFOs Faller and Magsaysay] were federal employees or officers, (2) the defendant did not reasonably believe force was necessary to defend against an immediate use of unlawful force, and (3) the defendant used more force than reasonably necessary in the circumstances. *See* Ninth Circuit Model Criminal Jury Instructions 8.3 (2022 ed.).

The Court finds that though the two prior arrests are only marginally relevant, if at all. The government's proffer is too scant to "prove a logical connection between the knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act." *United States v. Mayans*, 17 F.3d 1174, 1181–82 (9th Cir. 1994). The government omits any detailed description of the precise tactics used in the two former arrests and omits the individual roles of each officer. From the Court's review of the transcript of the motion to suppress hearing, Federal Bureau of Investigation (FBI) TFOs Brian Jackson and Linda Theobald testified at the hearing. (ECF Nos. 41–43.) They testified that Detective Magsaysay, Detective Faller, Detective Jackson, and Detective Beckerle went into the dollar store initially. (ECF No. 55 at pg. 55.) TFO Theobold specifically testified she had the two previous contacts with Tisby so she didn't want to walk in and for him to recognize her. (*Id.* at pg. 51.) So she stayed back. (*Id.*) TFO Jackson had previous contacts with Tisby but by the time she entered the Dollar Store he was already engaged in an altercation with other officers. (*Id.* at pg. 15.) The government does not provide any police reports in connection with its motion to introduce the proposed prior bad act evidence. (ECF No. 70.) But the Defense does. (ECF No. 71.) It does not appear that the arresting officers in the two prior cases were the alleged victims here. The government

1  argues that Detectives Jackson, Theobold, and Alessio were at all three arrests

2  and one or more of these detectives was already expected to be called as a witness

3  at trial. It appears TFOs Berckerle, Magsaysay, and Faller were the ones who

4  initiated this arrest. Whether Mr. Tisby could recognize TFOs Jackson, Theobald,

5  and Alessio has no bearing on whether he could identify TFOs Berckerle,

6  Magsaysay, and Faller. The Court thus finds the two prior covert arrests are of

7  no or marginal relevance.

8      The Court also cannot say on this record that either the specific tactics or

9  the individual officers were so familiar to Tisby that he would have recognized the

10  officers or understood that the tactics involved in this case were lawful arrest

11  tactics. Indeed, one police report describes one of the previous covert arrests as

12  involving a vehicle block and the other involved unspecified tactics at Sam's Club.

13      The Court finds that any probative value of the prior arrests would be

14  substantially outweighed by a danger of unfair prejudice, confusion of the issues,

15  and wasting time. *See* Fed. R. Evid. 403. Introducing evidence of Tisby's prior

16  arrests risks turning this trial into a mini trial on Tisby's prior arrests, with both

17  parties introducing evidence and argument about what Tisby saw and

18  understood during his prior arrests. The details of each arrest would be necessary

19  to allow a jury to decide whether those experience support the inference that

20  Tisby understood that the individuals at issue in this case were law enforcement

21  officers using lawful force. Most critically, evidence about two prior arrests is

22  highly prejudicial and the Court is particularly wary of the potential for unfair

23  prejudice in the admission of prior criminal acts. *See Old Chief v. United States*,

24  519 U.S. 172 (1997).

25      **C. Other Crimes Evidence Regarding Tisby's Violent Past:**

26      The government also anticipates that the defense will question the TFOs'

27  tactics and the force used prior to and during the covert takedown to bolster

28  Tisby's theory of self-defense against unlawful force. Specifically, the government

expects that the defense will challenge the tactics the TFOs used to arrest Tisby. As an initial matter, the government contests that such evidence is relevant and should be precluded because "[i]rrelevant evidence is not admissible." FED. R. EVID. 402. However, if the Court permits that argument or questioning supporting such a claim, the government submits that the defense will have opened the door to other acts evidence relating to Tisby's violent past that were known to the TFOs who executed the arrest of Tisby on March 18, 2022. The other acts evidence include:

- An active notification had been issued to law enforcement that deemed Tisby a violent offender or a serious threat to law enforcement. The notification included information that Tisby had a criminal history that included homicide or attempted homicide and that caution should be used in approaching him.

- On March 10, 2022, a bench warrant was issued because Tisby failed to appear in court to face charges of battery with a deadly weapon resulting in substantial bodily harm that occurred on November 1, 2021. Tisby allegedly produced a firearm from his person and shot another male in the head, which ultimately killed him.

The Court finds that Tisby has the right to question the tactics used by law enforcement without the government introducing highly prejudicial information about him. It is the decision to engage in a covert arrest with plain clothed officers that forms the basis of Tisby's defense. Tisby cannot mount a defense without being able to explain how the tactics used in this case elevate the risk of a confrontation by potentially causing confusion on the part of the arrestee as to whether he is being subject to an arrest by law enforcement. The officers' belief that Mr. Tisby used force, possessed a dangerous weapon, or was a flight risk may have informed their decision to engage in a covert arrest, but it is the consequences of using covert tactics, rather than their rationale, that are at issue.

This is reinforced by Tisby's representation that he "does not intend to contest that the officers are performing their lawful duty." (ECF No. 71 at 9.) The Court agrees with Tisby that why officers here elected to engage in a covert arrest and use the tactics here are not relevant.

The Court also finds that, to the extent that the officers believed that Tisby had a violent past, the probative value of these prior incidents is substantially outweighed by a danger of unfair prejudice. *See* FED. R. EVID. 403. The information that law enforcement had about Tisby is highly prejudicial and involves information that he may be responsible for ending a human life. The danger of unfair prejudice to Tisby is extraordinarily high relative to probative value of such evidence.

The government may elicit testimony that a decision was made to do a covert arrest, explain what a covert arrest is, and what they did in this case, but the government may not explore why officers made the decision to engage in a covert arrest of Tisby. The government is also prohibited from exploring, even in the form of hypotheticals, why officers generally would make the decision to engage in a covert arrest.[1]

**D. Tisby's Prior Criminal History**

Tisby seeks an in limine ruling responsive to the government's position that evidence of Mr. Tisby's prior criminal history, including but not limited to, the facts underlying Mr. Tisby's prior failures to appear, Mr. Tisby's arrest history, and Mr. Tisby's prior convictions are admissible under Federal Rule of Evidence 609 should he choose to testify at trial. (ECF No. 71.)

---

[1] The Court understands that at the hearing on the parties' motions in limine, the Court left open the possibility that the government could explore why officers engaged in a covert arrest in the form of hypothetical questions. The Court has considered the issue and determined that even hypothetical questions would allow for the insinuation that Tisby was such a dangerous individual that officers determined a covert arrest was appropriate in his case. Such hypothetical questioning would invite jurors to speculate about Tisby's criminal history and the facts and circumstances around the warrant. To protect Tisby's right to a fair trial, the Court has decided to disallow that line of questioning entirely.

The government does not identify any conviction in its notice, but Tisby notes that Tisby's gross misdemeanor for possession of a stolen vehicle and prior failures to appear and arrest history are outside the scope of Rule 609, and the Court agrees. First, Rule 609 refers specifically to convictions and not arrests, so Mr. Tisby's arrest history and prior failures to appear are inadmissible. *See* FED. R. EVID. 609. Second, the underlying details of any conviction are not admissible under Rule 609. *See United States v. Osazuwa,* 564 F.3d 1169, 1175 (9th Cir. 2009) ("Generally, 'only the prior conviction, its general nature, and punishment of felony range [are] fair game for testing the defendant's credibility.' "); *United States v. Sine*, 493 F.3d 1021, 1036 n.14 (9th Cir. 2007) ("[A]bsent exceptional circumstances, evidence of a prior conviction admitted for impeachment purposes may not include collateral details and circumstances attendant upon the conviction.") The Advisory Committee's Notes suggest that the value of conviction evidence for impeachment purposes is limited solely to the fact that a crime was committed, not the specific facts underlying that crime. *See* FED. R. EVID. 609 advisory committee's notes on proposed rules ("As a means of impeachment, evidence of conviction of crime is significant only because it stands as proof of the commission of the underlying criminal act."). Second, a gross misdemeanor conviction for possession of a stolen vehicle is not admissible under Rule 609 because it does not involve a dishonest act or false statement. *See Dougherty v. Cnty. of Suffolk,* No. CV 13-6493 (AKT), 2018 WL 1902336, at *3 (E.D.N.Y. Apr. 20, 2018) (finding misdemeanor conviction for attempted criminal possession of stolen property inadmissible under Rule 609(a)(2)).

IT IS THEREFORE ORDERED that the government's motion in limine (ECF No. 70) is DENIED consistent with this Order.

///

///

IT IS FURTHER ORDERED that Tisby's motion in limine (ECF No. 71) is GRANTED consistent with this Order.

DATED THIS 10th day of May 2023.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE